RANNELLS, *Appellant*, v. GERNER.

1. **Insane Person, Deed of.** The deed of an insane person, after being placed under guardianship, will be absolutely void; and guardianship is conclusive respecting the disability of the ward, whether he be insane or not. And it is immaterial from what cause his insanity resulted, whether from old age, sickness, habitual drunkenness or other causes whatever.

2. ———: ASSENT OF GUARDIAN. The assent of the guardian of an insane person to the latter's deed, confers upon that instrument no element of validity.

3. **Insane Person, Disposition of Real Estate of.** The provisions of the statute for the disposition of the real estate of insane persons, (Wag. Stat., pp. 714, 715, ¿¿ 19 to 29, inclusive,) are exclusive of every other method. The proceedings are *in rem*, binding and af-

fecting no person, except so far as they deprive the owner of his land.

4. ———: EVIDENCE OF LUCID INTERVAL: DEED OF. No evidence of a lucid interval is admissible to controvert the insanity of a person after being placed in ward, and *non est factum* may be pleaded to his deed made after being placed under guardianship and the special matter given in evidence.

5. **Married Woman**: DOWER. A married woman can relinquish her dower in the real estate of her husband, only by " their joint deed, acknowledged and certified " as provided by statute. R. S. 1879, §§ 669, 2197. And the wife of an insane person does not relinquish her dower in the land of her husband, sold by his guardian, by joining with her husband in signing the deed thereto. Such deed, so far as the husband's execution of it is concerned, has no legal existence or vitality, he not being the possessor of a sound mind and capable of contracting.

6. ———: ESTOPPEL. Estoppels *in pais* are not applicable to *femmes covert*, except where regarded as *femmes sole* in consequence of the possession of separate estates.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

Plaintiff's petition states substantially that she is the widow of Charles S. Rannells, deceased, and that during their marriage he was seized of certain real estate in the city of St. Louis, and the owner thereof in fee simple; that said real estate was conveyed to defendant's grantor in October, 1867, by the guardian of Charles S. Rannells, the said Rannells being in March, 1866, declared to be a person of unsound mind; that plaintiff never relinquished her dower in said premises, and that she has been wrongfully deprived and deforced thereof by defendant and his grantor, and prays that she may be seized of her dower and allowed $200 damages.

Defendant's answer admits the allegations of the petition, except that Charles S. Rannells was, in March, 1866, declared to be of unsound mind, and that plaintiff, as his widow, is entitled to dower in the premises in question. The remainder of the answer necessary to an understanding

of the questions decided, avers in substance that Charles S. Rannells, in March, 1866, was duly found incapable of managing his own affairs, because of habitual drunkenness, that a guardian was appointed for him; that the guardian, in October, 1867, sold the premises described; that it was announced to the bidders at the sale that the same would be as effectual as if made by Charles S. Rannells, himself, and that plaintiff would join with her husband in the deed for the purpose of relinquishing her dower in the premises sold; that these announcements were made with plaintiff's knowledge and consent. That the deed was executed by the guardian of Charles S. Rannells, and by said Rannells and his wife, the plaintiff, the said Rannells having a lucid interval on that day, and that the deed was acknowledged by Charles S. Rannells and plaintiff, his wife, in the usual manner. It is further averred in the answer, that the full consideration, $1,335, was paid for said premises, and that plaintiff has had the use and benefit thereof, or a part of the same, and that it is inequitable and unjust in her to claim dower in said land, and that she ought to be held to be estopped from so doing.

Plaintiff moved in the circuit court that judgment be entered in her favor upon defendant's answer, which was done. Defendant appealed to the St. Louis court of appeals, where that judgment was reversed, and plaintiff appealed to this court.

*George A. Castleman* with *Andrew Mackay, Jr.*, and *Julian J. Laughlin* appellant.

A *femme covert* can convey her estate and relinquish her inchoate right of dower only in the manner provided by statute. R. S., §§ 669, 678, 680; *Hill v. West*, 8 Ohio 226; *Martin v. Dwelly*, 6 Wend. 9. As a general rule the deed of a *femme covert*, unless joined by her husband, or authorized by statute, in respect to her sole property, is void. Washb. on Real Prop., (4Ed.) 224, 248; 2 Kent's

Com., 168; 2 Bla. Com., 293; *Lowell v. Daniels*, 2 Gray 161; *Baxter v. Bodkin*, 25 Ind. 172; *Bressler v. Kent*, 61 Ill. 426; *Moore v. Tuesdale*, 5 B. Mon. 356. Neither married women nor infants can estop themselves, either by covenant or by matter *in pais*. *Bemis v. Call*, 10 Allen 512; Big. on Estop., 485; *Drury v. Foster*, 3 Wall. 34; *Morrison v. Wilson*, 13 Cal. 494; *Rangely v. Spring*, 21 Mo. 130; *Jackson v. Vanderhayden*, 17 Johns. 167; *Hempstead v. Eastin*, 33 Mo. 142. A deed made by a person of unsound mind, who has for that reason been placed under guardianship, will be void. And the same is true of a person under guardianship for incapacity to manage his affairs, though not in fact insane, even though with the approbation of his guardian. 3 Wash. on Real Prop., 224, b. 3, chap. 4, 51, § 14, and note; *Imhoff v. Butler*, 31 Pa. St. 243. A *femme covert* is not estopped by the covenant of her deed, except so far as being executed in accordance with law, it passes her title, and she may claim a subsequently acquired title against the covenant. *Jackson v. Stevens*, 16 Johns. 110; *Urquart v. Clarke*, 2 Rand. 549; *Chauvin v. Wagner*, 18 Mo. 551. The alienation of real estate by the husband, whether voluntary, or by deed or will, or involuntary as by proceedings against him, or otherwise, will confer no title on the alienee as against the wife in respect to her dower. *Grady v. McConkle*, 57 Mo. 172. The extinguishment of the right of dower in a deed which conveys no title to lands, will not pass the right of dower as a separate substantive estate. *Douglass v. McCoy*, 5 Ohio 522. A wife who has released her dower in a conveyance which is afterward set aside as fraudulent as to creditors, is not thereby estopped from claiming dower as against such creditors. *Lowry v. Fisher*, 2 Bush. 70; *Robinson v. Bates*, 3 Met. 40; *Maloney v. Horan*, 53 Barb. 29.

*Lucien Eaton* with *M. L. Gray* and *Jacob Klein* for respondent.

The deed made by the guardian in conformity to law

and joined in by C. S. Rannells and · plaintiff, being ac-
knowledged in due form, released and . barred plaintiff's
inchoate right of dower.   The husband was not insane, but
incapable of managing his affairs from habitual drunken-
ness.   His contract was not void.   *Darby v. Cabanne*, 1
Mo. App. 126 ; *Lewis v. Jones*, 50 Barb. 670.   But our stat-
utes cover the case.   1 Wag. Stat., 715, §§ 30, 32; *Ib.*, 54,
§ 13 ; *Rannells v. Gehner*, 9 Mo. App. 506; *Lee v. Lindell*,
22 Mo. 202.   There is a complete equitable estoppel *in pais*.
The legal effect of the answer is to charge plaintiff with
claiming dower in the face of her own fraud.   Coverture
is not a weapon for fraud in intent or result; it is only a
shield for the protection of the weak.   1 Story's Eq., §
385 ; Big. on Estop., 488, and cases cited ; Cord on Mar.
Wom., § 24 ; *Savage v. Foster*, 9 Modern 35 ; *Beckett v.
Cordley*, 1 Brown Ch. 357 ; *Schwartz v. Sanders*, 46 Ill. 18 ;
*Wright v. Arnold*, 14 B. Mon. 638 ; *Drake v. Glover*, 30 Ala.
390 ; *Malony v. Horan*, 53 Barb. 29, 40 ; *Dann v. Cudney*, 13
Mich. 239 ; *Bien v. Heath*, 6 How. (U. S.) 238, 248.   The
rule applied to infants should be applied to married women.
Let them at least refund their ill-gotten gains.   *Kerr v.
Bell*, 44 Mo. 120 ; *Baker v. Kennett*, 54 Mo. 82 ; *Sweany v.
Mallory*, 62 Mo. 485.   A married woman's covenants so far
estop her that she cannot assert claims that repudiate those
covenants.   *Hill v. West*, 8 Ohio 222 ; *Collard v. Swan*, 7
Mass. 291; *Massie v. Sebastian*, 4 Bibb 433 ; *Connolly v.
Branstler*, 3 Ky. 702 ; *McCullough v. Wilson*, 21 Pa. St. 436 ;
*Drake v. Glover*, 30 Ala. 382.

SHERWOOD, J.—The deed of a non-sane person, after
being placed under guardianship, will be absolutely void.
Tiedman Real Prop., § 792 ; *Wait v. Maxwell*, 5 Pick. 217 ;
*Pearl v. McDowell*, 3 J. J. Marsh 658 ; *Griswold v. Butler*, 3
Conn. 227 ; Martindale Law Convey., §§ 26, 311 ; *White v.
Palmer*, 4 Mass 147 ; *Ingraham v. Baldwin*, 9 N. Y. 45 ; *Wil-
cox v. Fitzhugh*, 12 Barb. 235.   And guardianship is con-
clusive respecting the disability of the ward.   *Wadsworth*

*v. Sherman,* 14 Barb. 169; *Leonard v. Leonard,* 14 Pick. 280; *White v. Palmer, supra; McDonald v. Morton,* 1 Mass. 543. And the same rule holds whether the person placed in the care of a guardian is insane or not. It is sufficient that the inquisition finds him to be of unsound mind and incapable of managing his own affairs, in consequence of habitual drunkenness. 14 Barb., *supra.* Although neither an idiot nor a lunatic, the person in ward is dealt with as if of that character, whether his incapacity result from old age, sickness or other cause whatever. The putting him in the control of a guardian, is in the nature of a commission on the writ of *de lunatico inquirendo. Barker's case,* 2 Johns. Ch. 232; *Gibson v. Jeyes,* 6 Ves. 273; *Ridgeway v. Darwin,* 8 Ves. 65; *Ex parte Cranmer,* 12 Ves. 445; *Imhoff v. Witmer,* 31 Pa. St. 243; 3 Washb. Real Prop., 248. And the assent of the guardian of such incapacitated person to the latter's deed, confers on that instrument no element of validity. *Griswold v. Butler,* 3 Conn. 231.

In the case at bar no distinction is to be taken between the circumstances which gave origin to Rannells, the husband, being placed under guardianship, and those of an ordinary inquisition of lunacy. The authorities cited and our statutes recognize no difference between a person incapacitated on account of habitual drunkenness, and incapacitated from any other cause. 1 Wag. Stat., pp. 712, 718, §§ 1, 52.

In *Imhoff v. Witmer, supra,* where the obligor of the bond in suit had been found and decreed an habitual drunkard, five years prior to the execution of such bond, and a committee appointed to take charge of his estate, the supreme court of Pennsylvania say: "The object of the statute was protection and guardianship over the persons and estates of parties wanting capacity to take proper care of either, and to preserve the property of such from being squandered, or imprudently used to their own injury and that of their families, if they have any. It is not necessary to adduce reasons to prove the self-evident proposition, that

to admit the capacity of control to exist in the lunatic or habitual drunkard over his estate, after inquisition settling his condition in this respect, or submit it to be controverted by evidence of lucid intervals or sobriety at the moment of contracting, would leave the estates of these unfortunate classes about as much exposed as before proceedings had in regard to them. The inquisition and decree standing of record, was intended for notice to all the world of the incapacity of the particular party to contract. It is the judgment of the law to this effect, and as a consequence, his acts in regard to his property are absolutely void while the condition exists. He can make no contract that will bind or render it liable to take effect, either in his lifetime or after death, for the reason that the law has settled that the important element of a valid contract does not exist, namely, the capacity to contract."

The statute to which reference has been already made, makes provision full and complete for the sale of the real estate of the person in ward. 1 Wag. Stat., pp. 714, 715, §§ 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29. These statutory provisions must be regarded as exclusive of every and any other mode of disposition of the ward's real estate, and of strictly prohibiting any other method of disposition of it from being adopted, and this in accordance with the maxim *expressio unius,* etc. But it is said that section 32, of the same chapter, impliedly recognizes a contract of sale by the ward of his land where it meets with the approbation of his guardian. This section will not bear such a construction; for to construe it thus would be to render valueless the preceding provisions of the statute which particularly prescribe the means to be employed, and measures to be taken, in order to an effectual sale of the ward's land. Why go through that lengthy, formal and expensive process if the adjudged lunatic, by a little private dealing on his own account, could, with his guardian's approbation, sell his own land and make his own deed? Was it not the very object of the guardianship, the humane purpose of the law which

authorized it, that the ward incapacitated by age, by mental weakness, by dissipation, or other cause whatsoever, should be precluded from managing those affairs which a jury, under the direction of the court, had found and declared him incapable of managing? Is it not altogether inconceivable that the legislature, after having provided the method whereby a person should be adjudged insane, and a guardian appointed for him; after having provided specific means whereby the land of such person should be sold, and a deed therefor made by the guardian, that in a subsequent and almost contiguous section, they should give the adjudged lunatic *carte blanche* to make his own contracts of sale of his land, needing only his guardian's consent in order to make them in every way effectual? Is it not a very singular law, to be sure, which, because of mental incapacity, takes away a man's control of his person and of his property, and after providing methods for selling that property and the making a deed therefor by a legal custodian, should yet turn the *poor drivelling incapable into the streets, to hunt up purchasers, strike bargains, sign contracts, and execute deeds?* It seems too plain for discussion that no such construction can reasonably be put upon the section under consideration.

If it be asked what is the proper construction to be given to that section, it may be replied, that in one point of view it may be held to be but declaratory of the common law disability of one *non compos* to make any contract. Or it may relate to *personal* property; property which may have been disposed of by the ward *anterior* or subsequent to office found. Either of these views would certainly better consist with the other sections of the statute; and the rule is, if possible, to make the whole of the statute stand, and to give meaning, force and effect to all of the sections. But it is said that as section 30, of the same chapter, provides that " every conveyance made under the order of the county court pursuant to the provisions of this chapter, shall be as valid and as effectual as if the same had been

31—80

executed by such insane person when of sound memory and understanding," that this section puts the validity of the deed beyond doubt as a conveyance of the wife's dower, she having joined in the execution of such deed.

When a sale takes place of a man's land under ordinary *fi. fa.*, the sheriff is regarded as his agent, and the law implies, and will not allow it to be gainsaid, that the conveyance is "as valid and effectual as if the same had been executed" by the execution defendant. So that it may be said of such a deed, as is said elsewhere, that "when the wife joins in such a conveyance, she joins in a deed which is none the less her husband's in fact and in effect, because executed through an agency appointed by law." But though this be the case, no one has ever yet accumulated a sufficient stock of temerity to assert that since the sheriff's deed was "as valid and as effectual as if the same had been executed by such defendant, therefore the wife of the defendant might relinquish her dower by joining the sheriff in the execution of such deed. And yet the two cases are precisely parallel. If the wife could not relinquish her dower by joining in the execution of the sheriff's deed, no more could she thus relinquish by joining in that of the guardian.

The steps taken by a guardian of an insane person for the sale of the land of the latter, are proceedings *in rem*, binding no person and effecting no person, only so far as they deprive the owner of his land. They are no more binding beyond this purpose which they accomplish, than are administration proceedings for the sale of land for the payment af debts binding on the mouldy corpse of the decedent. In the latter case the deed executed by the administrator conveys to the purchaser "all the right, title and interest which the deceased" had in the land; in the former case the deed of the guardian, conveying the land of his ward, does but convey the right, title and interest of his ward in the land, and can convey no more. In neither statute, whether that respecting ordinary administration,

that regarding insane persons, or that in respect to sales under execution, is the slightest intimation given that it is expected or will be either opportune, or appropriate, or lawful, for the widow or wife to join in the deed of administrator, sheriff or guardian.

The legislature has provided but *one mode* whereby a married woman may relinquish her dower in the real estate of her husband, and that is " by their joint deed, acknowledged and certified," etc. 1 R. S. 1879, § 669 ; *Ib.*, § 2197. But as the deed of a non-sane man, executed after his being put in ward, is conclusively presumed to be void ; as no evidence is admissible of a lucid interval to controvert the adjudication had in his case ; (*Imhoff v. Witmer ; Leonard v. Leonard,* and other cases, *supra ;*) as *non est factum* may be pleaded to the deed and the special matter given in evidence, (*Yates v. Boen,* 2 Strange 1104 ; *Dexter v. Hall,* 15 Wall. 9, and cases cited,) it can but follow that the plaintiff never relinquished her dower in the land sold by her husband's guardian, for the self-evident reason that the instrument which her husband went through the dumb show of singing, and which she signed also, was not and could not be his act, deed or conveyance, never, so far as his execution of it was concerned, having had any " legal existence or vitality." *Van Deuson v. Sweet,* 51 N. Y. 378. The very term, " their joint deed," necessarily imports and implies that the husband, as well as the wife, should be the possessor of a " sound mind capable of contracting." *Leggate v. Clark,* 111 Mass. 308.

It only remains to say, respecting the equitable subject matter of defendant's answer, that it is the established law of this State, that estoppels *in pais* are not applicable to *femmes covert,* except where regarded as *femmes sole,* in consequence of possessing separate estates. *Hord v. Taubman,* 79 Mo. 101 ; *Meier v. Blume, ante,* p. 179 ; *Mueller v. Kaessman,* decided present term : *Bagby v. Emberson,* 79 Mo. 139 ; *Atkison v. Henry, ante,* p. 151 ; *Shroyer v. Nickell,* 55 Mo. 264 ; *Whitely v. Stewart,* 63 Mo. 360 ; *Hempstead v. Easton,*

33 Mo. 142. And the same view taken by this court respecting this matter, is generally taken elsewhere. *Lowell v. Daniels*, 2 Gray 161; *Glidden v. Strupler*, 52 Pa. St. 400; *Morrison v. Wilson*, 13 Cal. 494; *Martin v. Dwelly*, 6 Wend. 9; *Butler v. Buckinham*, 5 Conn. 492; *Martin v. Mitchell*, 2 Jac. & Walk. 424; 7 Cent. Law Jour. 182; *Drury v. Foster*, 2 Wall. 24. The cases of *McCullough v. Wilson*, 21 Pa. St. 436, and *Drake v. Glover*, 30 Ala. 382, are cases respecting separate estates, and consequently can have no bearing on the case at bar. Isolated cases may, perhaps, be found supporting the views advanced by defendant's counsel, but they are opposed by the authorities heretofore cited, and, indeed, by the great current of authority.

For these reasons, the judgment of the court of appeals should be reversed and the cause remanded to that court, with directions that a judgment be entered affirming that of the circuit court. All concur.