MARSHALL, J.
Action to set aside a deed of trust upon realty, and for an accounting. .
The amended petition in this case is in two counts. The first count alleges, substantially, that the plaintiffs are the children and grandchildren of Jedediah E. McKenzie and Mary E. McKenzie .(who died before her husband); that at the May term, 1869, of the county court of Jackson county, Jedediah was properly and legally adjudged insane, and Eobert O. White was appointed his guardian; that at the February term, 1870, of said court White resigned as such guardian, and Byron E. Dye was appointed as his successor; that the records of said county court show that Dye, in writing, informed the court that Jedediah had been restored to his right mind, and asked for an inquiry into the fact by a jury, which was done on the same day, resulting in the jury finding that Jedediah had been restored to his right mind and that he had become and was then competent to transact his own business. The information had underwritten an affidavit of Dye stating that the statement (or information) was true according to the best of his belief, and was sworn to by Dye before the clerk of the county court on the 9th day of December, 1870, three days after the verdict of the jury; that accordingly Dye was discharged from his guardianship and Jedediah was discharged from care and custody; that after-wards at the August term, 1875, J. J. Davenport informed the county court that he was a partner of Jedediah, and that he was a person of unsound mind and incapable of managing his own affairs; that upon inquiry, before a jury, Jedediah *444 was adjudged insane, and Patterson Stewart was appointed guardian of his person and estate, and the guardian qualified as such and filed an inventory of his estate on the 21st of October, 1875, and afterwards on the 6th of September, 1870, the guardian made final settlement and was discharged; that on the 16th of March, 1891, the county court ordered all the papers and records of the court relating to the estate of Jedediah to be transferred to the probate court of Jackson county, and that the clerk of the county court transmitted a complete transcript of such record entries but certified that the original papers could not be found in his office; that thereupon his wife filed in the probate court a petition stating that Jedediah was a person of unsound mind, and had been so and likewise incapable of managing his affairs since 1869, when he was adjudged insane, and also that he had been so insane and incapable since the adjudication in 1875; that since 1875 he had never been adjudged sane and as a matter of fact had been insane since 1869; that a vacancy in the guardianship existed, which she prayed might be filled; that the probate court granted the prayer of the petition, and appointed Benjamin Warner his guardian, who, after duly qualifying, filed a motion in the probate court to set aside the adjudication of the county court, of December 6, 1870, declaring Jedediah restored to sanity, specifying two grounds for the motion: 1st, that the information, in writing, of Dye to the county court of Jedediah’s restored sanity, did not show that it was verified by oath or affirmation; and 2d, that the record did not show that Jedediah had any notice of the proceeding, or any reason why he was not notified; that on March 15th, 1875, as well as in 1869 Jedediah owned certain real estate in Jackson county (describing it); that on April 1st, 1875, Jedediah “went through the form of executing a deed of trust on said real estate to Charles II. Vincent, trustee for Patterson Stewart, to secure said Stewart against loss, as an indorser of a note signed by J. J. Davenport and Jedediah E. McKenzie, *445 dated March Tst, 1875, for three thousand dollars for one year at ten per cent interest,” which was duly recorded in Jackson county, and which contained a power of sale in case the note was not paid; that Yincent refused to act as trustee and the then sheriff of Jackson county was appointed as trustee in his stead, and he advertised the property for sale, at the request of Stewart, and sold it on February 20th, 1877, to M. S. C. Donnell for the sum of $2,105, but the trustee’s deed was made to Catherine E. Donnell by direction of her husband; that Donnell immediately took possession of the property and has held possession thereof ever since, and established a rock quarry on the property from which he has taken a large quantity of rock; that thereafter on the 29th of July, 1886, Donnell executed a deed of trust on the property to secure a note for fifteen thousand dollars, payable at three years, with seven per cent interest, to O. H. Dean, trustee for Israel B. Mason; that since the institution of the suit the defendant, the Citizens National Bank of Kansas City, has acquired said note for fifteen thousand dollars, and said bank also claims to be the owner of another note for five hundred dollars, secured by a second deed of trust on the property, given by Donnell to G. F. Ballingal. The first count then prays for a cancellation of the trustee’s deed from Bailey (sheriff), to Catherine E. Donnell, and of the two deeds u£ trust put on the property by the Donnells, that the title to the property be vested in plaintiffs, as the children and grandchildren of Jedediah, now deceased, that defendants be “debarred and estopped” from having or claiming any right or title thereto adverse to plaintiffs, and that the Donnells be decreed to account for the rents and profits and also for the rock taken from the property, and for general relief.
The second count of the petition states the relationship of plaintiffs to Jedediah, his ownership of the property on April 1st, 1875, his death on the 9th of October, 1892, the execution on April 1st, 1875, of the deed of trust to secure *446 Stewart as indorser on the note for three thousand dollars, the fact that Vincent, the trustee in the deed of trust never knew of its execution and refused to act as trustee, informing Stewart when he asked him to act under it that he had been informed and believed that Jedediah was insane, the substitution on January 16th, 1877, of the sheriff (Bailey) as trustee, in place of Vincent, by the circuit court, upon the ex parie application of Stewart, who knew of the insanity of Jedediah, but did not inform the circuit court of it; that from August 7th, 1875, to September 5th, 1876, Stewart “was the acting defacto guardian of the person and estate of said McKenzie, that at the date of said application said McKenzie had no guardian; that no notice of any kind was given to said McKenzie of said application;” that Bailey, as substituted trustee, sold the property on February 20th, 1877, to M. S. C. Donnell, but made the deed to Catherine E. Donnell by his direction; the execution of the deed of trust by Donnell, to secure the fifteen thousand dollar note to Dean, trustee for Mason, dated July 29th, 1886; that when this deed of trust was executed, “said Jedediah E. McKenzie stood adjudged to be a person of unsound mind, and incapable of managing his affairs, by a judgment of the county court of Jackson county, Missouri, which judgment had been duly given and made by the said county court long prior to that time, which said judgment was duly spread upon the records of said court at the date of the execution of said deed of trust. That at said date said trustee for Israel B. Mason as well as said Israel B. Mason had actual knowledge of all the facts in regard to the insanity of said Jedediah E. McKenzie, as they are hereinbefore and hereinafter alleged;” that at the time of the execution of the Stewart deed of trust, and long prior thereto, and up to his death, Jedediah “did not possess a sane 'mind. That at all of the dates aforesaid he was an insane person and a person of unsound mind, and was incapable of managing his affairs. Ilis mind was so unsound *447 on the 15th day of March, 1875, on the 1st day of March and 1st day of April, 1875, and as a matter of fact at all times since the year 1869, that he did not have capacity to contract or execute said deed of trust or note;” that “the proceeds of said three thousand dollar note, signed by J. J. Davenport and Jedediah E. McKenzie as aforesaid, and pretended to be secured by said last mentioned deed of trust, were all wasted on account of the insanity and incapacity of Jedediah E. McKenzie to manage and control the same, and that he never received any benefit whatsoever from the proceeds of said three thousand dollar note, on account of his said insanity and incapacity to transact business, that at the execution of said pretended deed of trust, said Petterson Stewart, the beneficiary therein, had full and complete knowledge of the fact that said McKenzie had been and was then an insane person, and a person of unsound mind, and incapable of managing his affairs; that at the date of the pretended execution of said pretended trustee’s deed from O. W. P. Bailey to Catherine E. Donnell, said Catherine E. Donnell and M. S. C. Donnell, her husband, were informed and had full and complete knowledge of the fact that said McKenzie was a person of unsound mind and incapable of managing his affairs when he pretended to execute said deed of trust, and that he had been a person of unsound mind and incapable of managing his own affairs continuously from that date up to and including the date of the execution of said pretended trustee’s deed to Catherine E. Donnell; and that said Catherine E. Donnell and M. S. C. Donnell, her husband, have all along had actual knowledge of all the facts in regard to the insanity of said Jedediah E. McKenzie herein set forth; said Catherine E. Donnell and M. S. O. Donnell were warned and admonished of the fact of said insanity of said McKenzie on the date of said purchase at said trustee’s sale. Plaintiffs hereby offer to pay to said Catherine E. Donnell and M. S. C. Donnell the purchase *448 price paid for said real estate, to wit, twenty-one hundred and five dollars with interest thereon from the date of said purchase, if equity and justice so require, and hereby offer to do what in equity and justice they ought to do in the premises.” The deeds of trust for fifteen thousand dollars and for five hundred dollars to Mason and Ballingall respectively, are then set out and alleged to have been executed to hinder plaintiffs from obtaining their just rights, and the five hundred dollar deed of trust is alleged to have been made by Donnell and ostensibly assigned to the bank as a part of a scheme between them, to enable the bank to demand the assignment by Mason of the fifteen thousand dollar deed of trust to the bank, so as to protect the five hundred dollar second deed of trust, and that the bank forced Mason so to assign to it his fifteen thousand dollar deed of trust, but that in fact Donnell furnished the money to take up theM’ason deed of trust, and hence it has been paid and satisfied. This count prays for cancellation of the deed from Stewart’s trustee to Donnell, of the Mason and the Ballingall deeds of trust, for vesting the title in the plaintiffs, for an accounting by the Donnells for the rents and profits and for the rock taken from the property, and for general relief.
Catherine E. Donnell, M. S. C. Donnell, and the Citizens National Bank demurred, separately, to each count of the petition, specifying want of equity in each count. The circuit court sustained the demurrers to the first count of the petition, and overruled them as to the second count. The plaintiffs refused to plead over as to the first count and final judgment was rendered in favor of defendants on the first count on the 20th of May, 1893. The defendants filed separate answers to the second count and plaintiffs replied. At the April term, 1895, the circuit court tried the case by submitting to a jury the following issues of fact, viz.: “Was Jedediah McKenzie insane on the 1st of April, 1875? If you find that he was, then the second question is: Did he continue insane from that date to the date of his death?” *449 The jury answered both questions in the affirmative. There-' upon, at the same term, the court adopted the verdict of the jury and found the issues as to insanity in favor of the plaintiffs, but held the case open as to the accounting, and referred the ease to a referee, to state the account, who found as follows: 1st, Taxes paid by defendants, $3,841.71; interest on same, $1,464.77; 2d, repairs, $178.25; 3d, rents received from premises by defendants, $640; from sale of rock, $130; 4th, rental value of property, $250 a year, from February 20th, 1877, aggregating, $4,500; interest on same, $2,295; 5th, attorney’s fee of $500 for successfully resisting condemnation of a strip of 30 by 400 feet off the property, and also an assessment of about $1,400 against the remaining property ever and above the damages allowed, for the purpose of opening 23d street; 6th, attorney’s fee of $750 for contesting a suit on a special tax issued against the property for grading Locust street, one-half of the fee for services already rendered in the circuit court and court of appeals and the other half for services to be rendered in the Supreme Court.
The defendants filed exceptions to the 4th and 6th findings of the referee. The court sustained these exceptions and fixed the rental value of the property at $120 a year, making $1,320; interest on same, $987; rents received by defendants, $640; interest on same, $96; rock quarried, $180; aggregating $3,223, and allowed defendants $750 for attorney’s fee rendered and to be rendered in contesting the suit on the tax bill for grading Locust street.
Thereupon on July 15th, 1895, the court entered a decree for the plaintiffs, canceled the deed of trust for $3,000 from Jedediah to Stewart’s trustee, also the trustee’s deed from Bailey, substituted trustee under the Stewart deed of trust, to Catherine E. Donnell,,also the deed of trust for $15,000 from Donnell to Mason, also the deed of trust for $500 from Donnell to Ballingall, vested the title to the property in the plaintiffs as the children and grandchildren of Jedediah, enjoined *450 the defendants and all persons claiming under them from claiming any .right or title to the property adverse to plaintiffs and quieted the title in plaintiffs, charged defendants, the Donnells, with $1,320 principal and $987 interest, for rental •value of the property, with $640 principal and $96 interest ■ for' rents collected by them for a part of the premises, and with $180 for rock quarried on the premises and sold by them, aggregating $3,223, required the plaintiffs to refund to defendants, the Donnells, the $2,105 purchase price paid by them, with $2,273.40 interest on the same, also the $3,841.70-taxes paid by them on the property, with $1,364.69 interest on the taxes paid, also the $500 attorney’s fees paid by them in defending the condemnation suit, and the $750 attorney’s fees in the tax suit for grading Locust street, also the $178.25 paid by them for repairs on the property, making $11,113.14, which plaintiffs were required to pay to redeem, less $3,223, which was charged against the defendants for rents and profits, aggregating $7,890.14, which the plaintiffs were ordered to pay the Citizens National Bank (the holders of the deeds of trust made by the Donnells to Mason and Ballingall) in order to put the parties in statu quo, and then distributed the costs between the parties. The defendants, on the same day filed motions for new trial, and in arrest of judgment, which the court, at once, overruled. The plaintiffs then filed a motion to modify the decree asking, 1st, to have the $11,113.14 adjudged against plaintiffs stricken out of the decree, and assigned as ground therefor that the court erred in holding the judgment of the county court entered at the December term, 1870, declaring Jedediah restored to sound mind, to be valid, and claiming that the adjudication of his insanity in 1869 remained in full and unimpaired force on the 1st day of April, 1875, and hence the Stewart deed of trust was void; 2d, to have the $2,105 purchase money paid by the Donnells at the sale by the trustee under the Stewart deed of trust, with the $2,273.40 interest on the same, stricken out, *451 because tbe consideration received by Jedediah from the Stewart deed of trust was lost by him during his insanity and resulted in no permanent or durable benefit to him or his estate; 3d, to have the $1,250 attorney’s fees stricken out because there is no equity in the allowance, and because as the $375 allowed for services yet to be rendered in resisting the suit on the special tax bill for grading Locust street, was inequitable; and 4th, to have the rents and profits restored to $250 a year, as recommended by the referee, instead of leaving them at $120 a year, as fixed by the court. The court on the same day overruled the motion. The plaintiffs excepted to the overruling of the motion to modify, and the defendants excepted to the overruling of their motions for new trial and in arrest. A bill of exceptions was filed, and the defendants gave bond and appealed to this court, where the case is now pending and numbered 8322. Afterwards the plaintiffs sued out a writ of error, which is the case now under consideration, and is numbered 8314.
I.
The first question open to review at the instance of the plaintiffs, is the correctness of the ruling of the circuit court in sustaining the demurrers to the first count of the petition. This count proceeds upon the idea that Jedediah E. McKenzie was in ward at the time the deed of trust to Stewart was executed on April 1st, 1875, and hence that deed was absolutely void. The allegations in support of this position are that at the May term, 1869, of the Jackson county court, Jedediah was adjudged insane and incapable of managing his own affairs, and Robert O. White was appointed the guardian of his person and the curator of his estate; that at the February term, 1870, of that court, White resigned and Byron E. Dye was appointed his successor; that the records of that court show that at the December term, 1870, of that court, Dye, filed an information, in writing, with the court, showing that *452 Jedediah had been restored to his right mind and praying that the facts be inquired into by a jury; that on the same day a jury was impaneled to inquire into the facts, a trial had, and a verdict rendered that Jedediah was restored to his right mind and was then competent to manage his own business; that the court then entered a judgment discharging Jedediah from care and custody, and also discharged Dye as guardian. The allegation is that this judgment is void because the record does not show that the information, in writing, filed by Dye, was verified by oath or affirmation, and because it also fails to show that Jedediah was-notified of these_ proceedings. The petition shows, however, that the information had subjoined an affidavit, in proper form, by Dye, but that the jurat of the clerk of the county court is dated December 9th, 1870, whereas the adjudication of restored sanity appears to have been rendered on the 6th of December, 1870. There is noth'ing in the record pleaded to show whether Jedediah was notified of the proceeding or was present at the trial or not. The Stewart deed of trust, sought here to be canceled, was made on April 1st, 1875, over four years after the entry of this decree.
It is objected, at the outset, by the 'defendants to the right of plaintiffs to have the ruling of that court with respect to the first count, reviewed by this court, because, it is urged, the error claimed was not called to the attention of the lower court in the motion for a new trial, and because no exceptions were saved by plaintiffs to the ruling of the trial court in sustaining the demurrers to the first count. The demurrers and the rulings of the trial court thereon are parts of the record proper and are open to review in this court without exception taken or saved below, for they arc not matters of exception, but matters appearing on the face of the record proper. [Bateson v. Clark, 37 Mo. 34 ; State v. Matson, 38 Mo. 489 ; Peltz v. Eichele, 62 Mo. 178 ; State ex rel. v. Griffith, 63 Mo. l. c. 548.] The plaintiffs submitted to final judgment against them on *453 demurrer as to the first count, but as the second count remained to be tried, they properly waited until the termination of that controversy, before bringing the case to this court. This was all they could do. They are, therefore, entitled to have the ruling of the trial court on demurrer to the first count reviewed by this court. The contention of the plaintiffs is that Jedediah had been placed in ward by the adjudication of the county court in 1869, and that the proceedings had in December, 1870, were void, because the information to the court that he had regained his sanity was not verified by the oath or affirmation of the informant, and because he was not notified, and it is claimed that these are statutory prerequisites to give the county court jurisdiction, and that they must affirmatively appear from the record. The constitution of 1865 provided (art. YI, sec. 23), “Inferior tribunals, to be known as county courts, shall be established in each county, for the transaction of all county business. In such courts, or in such other tribunals, inferior to the circuit courts, as the General Assembly may establish, shall be vested the jurisdiction of all matters appertaining to probate business, to granting letters testamentary and of administration, to settling the accounts of executors, administrators and guardians, and to the appointment of guardians and such other jurisdiction as may be conferred by law.” The General Assembly accordingly provided by Chapter 40, Title XIY, G. S. 1865, that the county courts upon information, in writing, that any person in the county was of unsound mind, might, if satisfied that there was good cause for the exercise of its jurisdiction, cause the facts to be inquired into by a jury. [Sec. 1.]
Section 3 of the Act gave the county court the right, in its discretion, “to cause the person alleged to be of unsound mind to be brought into court, and in this respect the law of 1865 was different from section 5515, R. S. 1889, which requires that the person alleged to be insane must be notified, unless the probate court order the person of the alleged insane *454 to be brought before the court, or spread upon its records the reason why such notice or attendance was not required. We call attention to the difference between the law as it is to-day and .as it was in 1869, and in 1870 when the proceedings were had declaring Jedediah insane and restored to sanity respectively, without deciding the constitutionality of those laws. The law of 1865 [chap. 40, sec. 39] provided that, “If any person shall allege, in writing, verified by oath or affirmation, that any person declared of unsound mind has been restored to his right mind, the court by which the proceedings were had shall cause the facts to be inquired into by a jury.” And section 40 of that law provided that if it be found that such person had been restored to his right mind, he should be discharged from care and custody, the guardian should immediately settle his accounts and restore to such person his estate. These provisions have remained the same ever since, and are now sections 5549 and 5550 of Revised Statutes 1889.
The county court was therefore vested by the constitution of 1865, with exclusive, original jursidiction in all matters relating to probate, the appointment of guardians, etc., and as to such matters its judgments import verity to the same extent and effect as judgments of courts of general common law jurisdiction do with respect to matters cognizable by them, and the former can not be attacked or impeached collaterally as to matters confided to their jurisdiction, any more than those of the latter as to matters of general jurisdiction. [Johnson v. Beazley, 65 Mo. l. c. 254 ; Long v. Joplin Mining, etc., Co., 68 Mo. l. c. 433 ; Sims v. Gray, 66 Mo. 614 ; Price v. Real Estate Ass’n, 101 Mo. 107 ; Murphy v. DeFrance, 105 Mo. 1. c. 62 ; Williams v. Mitchell, 112 Mo. l. c. 308 ; Macey v. Stark, 116 Mo. 494.]
The judgment of the county court in December, 1870, declaring that Jedediah had been restored to sanity and discharging him from care and custody, can not be attacked in this collateral proceeding at all, and it must be conclusively *455 presumed in this proceeding that the county court did its duty, that the information filed with it was verified as required by law and that Jedediah was duly notified of the proceedings and was in court when the proceedings were had. So strongly must this presumption of duty performed by a court with respect to acts done within its jurisdiction be indulged, that if it was necessary we would read the date in the jurat December 6th, and regard the 9th, as therein stated, as a clerical error.
The first count of the petition proceeded entirely upon the idea that Jedediah was in ward in 1875 when he made the Stewart deed of trust and had been so since 1869 when he was adjudged insane, and that the deed of trust was void, under the decision of this court in Eannells v. G-erner, 80 Mo. 474, and under section 5542, E. S. 1889, and hence the plaintiffs were entitled to have the deeds of trust canceled and the property restored to them, without tendering back any benefits they had received from those deeds of trust. The conclusion would follow if the premises were true. But the judgment of December, 1870, discharging Jedediah from ward conclusively settles that he was not in ward at the time he made the Stewart deed of trust. That judgment may be never so irregular or subject to-attack in a direct proceeding, but it is not void, and hence is not subject to this collateral attack. [Sims v. Gray, 66 Mo. 613.] The circuit court therefore committed no error in sustaining the demurrers to the first count of the petition.
II.
The plaintiffs assign as error the ruling of the circuit court in overruling their motion to modify the decree. It will be observed that the plaintiffs had obtained a verdict upon the second count of the petition declaring that Jedediah had been insane ever since 1869. It will also be noted that in the second count the plaintiffs offered to return the $2,105 *456 that had been paid for the property by the Donnells at the sale under the deed of trust and offered to do whatever in equity and justice they ought to do. When, however, the court decreed that they should refund this $2,105 with interest, and the taxes and repairs on the property expended by Donnell, and the attorney’s fees in protecting the property, the plaintiffs moved to modify the decree by striking out all these allowances to defendants, basing their application upon the theory that Jedediah had been in ward since 1869 (claiming that the decree of December, 1870, discharging him from ward was void), and hence they were not obliged to refund anything. This was only another way of raising the same question which was involved in the first count of the petition, and which as hereinbefore shown was properly held insufficient on demurrer. Hence there was no error in denying the motion to modify in this regard.
The second ground assigned in the motion to modify was that the $2,105 and interest should not be refunded because Jedediah was insane when he made the Stewart deed of trust and the benefits he received therefrom were lost and resulted in no permanent or durable benefit to him.
It is argued that there is no legal distinction between contracts of infants and those of persons non compos mentis who are not under guardianship; that they are both voidable, and that in respect to infants this court held, in Craig v. Van Bebber, 100 Mo. 584, and in Lacy v. Pixler, 120 Mo. l. c. 388, that an infant might upon attaining his majority, dis-affirm his contract and recover the property he had sold, without refunding or offering to return the purchase price received from the grantee, if he had lost or squandered the money received, but if he still had the money he had received he must return it, and the reason given was “the privilege of repudiating a .contract is accorded an infant because of the indiscretion incident to his immaturity; and if he were required to restore an equivalent, where he has wasted or squandered the *457 property or consideration received, the privilege would be of no avail when most needed.’’
It is enough" now to say that this case does not involve a disaffirmance of a contract by an infant. It is not necessary to review the conflicting decisions in America .and England as to the duties of an infant to restore the benefits received under a contract as a condition precedent to his right to dis-affirm. This case involves a contract made by a person alleged to have been insane when it was made, but who was not in ward at the time of its execution, and the proposition in this particular case arises under the second count of the petition, which while alleging that the proceeds of the contract were lost by the insane person and were of no permanent benefit to him or his estate, nevertheless offers to refund the price paid by the defendants, the Donnells, for the property, at the sale under the Stewart deed of trust, and also to do whatever in equity and of right should be done. The question, therefore, whether an insane person should be allowed to recover land conveyed without refunding the price received by him therefor, on the ground that the money has been lost or squandered by the grantor, is not fairly raised by this petition, and the case was not tried below on this theory. It was tried and won by plaintiffs on the theory that Jedediah was of unsound mind when he made the Stewart deed of trust, and that the plaintiffs desired to recover the property and expressly offered to refund the benefits received under the contract, and asked for an accounting.
The jury found that he was of unsound mind when the deed was executed. The court sent the case to a referee to state the account. The referee reported charging plaintiffs with all the items now complained of by them, and charging defendants with the rents received by them from the portion of the property rented to others, for the rock quarried therefrom and sold, and with the value^of the rents and profits of the remainder of the property. The plaintiffs filed no excep *458 tions to the report of the referee and made no objection of any kind to it. The defendants (the Donnells) filed exceptions to only two findings of the referee, one as to the value of the rents and profits, which the referee had fixed at $250 a year, and the other as to the allowance of $375 for attorney’s fees for defending the tax suit for grading Locust street. The court heard the exceptions of the defendants. The plaintiffs in support of the report of the referee offered testimony as to the rental value, and defendants in support of their exceptions to the referee’s report also offered testimony. The court entered its decree, and after the defendants’ motions for new trial and in arrest had been overruled, the plaintiffs filed their motion to modify the decree, raising, for the first time, any objection to the manner in which the case had been tried, or to the findings of the referee, and asserting for the first time (outside of the allegations of the petition, which were inconsistent with the whole theory of the second count of the petition) this idea that they ought not to be compelled to refund the benefits received under the contract because they had been lost or squandered. Under these circumstances this claim comes too late, and is inconsistent with the conduct of the case on the plaintiffs’ part.
Rut the law is settled in our State that a contract made by an insane person, in ward, is absolutely void [Sec. 5542, Ch. 86, R. S. 1889; Rannells v. Gerner, 80 Mo. 474], but that a contract made” by an insane person, not in ward, is only voidable, and that courts will not set it aside without restoring the parties to their original position.” [Blount v. Spratt, 113 Mo. l. c. 55 ; Wells v. Mutual Benefit Ass’n, 126 Mo. l. c. 637 ; Rhoades v. Fuller, 139 Mo. 187.]
In Blount v. Spratt, supra, Maoearlane, J., said: “There can be no doubt that a deed, or other contract of an insane person, mil generally be held invalid, yet, as is said by Mr. Pomeroy, 'While this rule is generally true, the mere fact that a party to an agreement was a lunatic will not operate *459 as a defense to its enforcement, or as a ground for its cancellation.’ ‘Where a conveyance or contract is made in ignorance of the insanity, with no advantage taken, and with perfect good faith, a court of equity will not set it aside, if the parties can not he restored to their original position and injustice would be done.’ [2 Pomeroy on Equity Jurisprudence, sec. 946, and authorities cited; Gribben v. Maxwell, 34 Kan. 10 ; Ins. Co. v. Hunt, 79 N. Y. 544 ; Wirebach v. Bank, 79 Pa. St. 549 ; 11 Am. and Eng. Ency. of Law, 136.] ‘And so, if a purchase is made in good faith, without any knowledge of the incapacity, and no advantage has been taken of the party, courts of equity will not interfere to set aside the contract if injustice will thereby be done to the other side, and the other parties can not be placed in statu quo or in the state in which they were before the purchase.’ [1 Story’s Equity .Jurisprudence, sec. 228.] .... Upon the facts found, the deed of trust was binding on plaintiff, though she was insane at the time of its execution.” The facts-in that case, as found by the trial court, were that the plaintiff was insane when she executed the deed of trust, and was so adjudged about seven months after its execution, but that the beneficiary in the deed of trust loaned the money to the plaintiff’s husband and took the deed of trust as security therefor in good faith, and without knowledge of her insanity. The lower court held the deed invalid, but this court reversed the judgment.
In Wells v. Mutual Benefit Association, supra, it appeared that the husband of the plaintiff during his lifetime .surrendered his certificate of membership in the defendant association, which entitled his wife, the plaintiff, to $5,000 on his death, and received from the association ten hundred and fifty dollars. After his death, his widow brought suit for the five thousand dollars, alleging that her husband was insane when he surrendered the certificate and accepted the ten hundred and fifty dollars, and made no tender of the money *460 received. The plaintiff obtained judgment in the trial court. On appeal to this court it was insisted that the judgment belo w should be reversed, because the petition did not state facts sufficient to constitute a cause of action. This court, speaking through Burgess, J., reversed the judgment and said: “Unless an insane person has been placed under guardianship, a contract entered into by such person is not absolutely void, but only voidable, and if made in good faith, and no advantage has been taken, it will be upheld. ‘And so if a purchase is made in good faith, without any knowledge of the incapacity, and no advantage has been taken of the party, courts of equity will not interfere to set aside the contract if injustice will thereby be done to the other side, and the parties can not be placed in statu quo, or in the state in which they were before the purchase.’ [1 Story’s Equity Jurisprudence (18 Ed.), p. 242.] It may be stated as a general rule that, ia order to justify setting aside a contract of an insane person, not under guardianship, on the ground of insanity, it must appear that the contract was made with the knowledge of such incapacity, or such information with respect thereto as would put a prudent person to the belief of the incapacity. [Matthiessen, etc., Co. v. McMahon’s Adm’r, 9 Vroom 536 ; Bank v. Moore, 78 Pa. St. 407.] But the deed' of such person after being placed under guardianship will be absolutely void. [Rannells v. Gerner, 80 Mo. 474, and authorities cited.] As the petition in this case contains’no averment that Plasten Wells, at the time of the execution and surrender of the certificate of membership, was insane and under guardianship, it should have alleged a willingness upon the part of the plain-, tiff to pay all premiums due by Wells at the time of his decease and to refund to defendant the money received by her husband and herself upon the surrender of his certificate of membership in the defendant association, which we think necessary in order to state a good cause of action, and that the judgment be reversed, because of its failure to do so,” etc.
*461 In Rhoades v. Fuller, supra, it appeared that the plaintiff owned one hundred and twenty-five acres of land in Mercer county, on which there was a mortgage for $1,000; that he exchanged it, subject to the incumbrances on it, with defendant for a house and lot in Princeton, on the 1st of November, 1893. On the 22d of November, 1893, on application of his wife, Ehoades was adjudged insane, and placed in ward. The guardian brought suit to set aside the exchange, alleged fraud and imposition practiced on Ehoades and that he was insane at the time of the trade, and offered to reconvey the property received by Ehoades and to pay the money paid out by defendant to take up the mortgages. The lower court found that the defendant had been guilty of no fraud or deceit in the transaction and yet entered judgment for the plaintiff setting aside the exchange of the properties. This court reversed, without remanding, the judgment below, and Burgess, J. delivering the opinion of the court, said: “The court found that defendant was not guilty of any fraud or deceit in negotiating the trade, and that finding is amply supported by the evidence. Assuming this position to be correct, then, in order to justify an affirmance of the judgment setting aside the trade, it must appear from the evidence that plaintiff Ehoades was insane, or incompetent from the want of mental capacity to understand the nature of the transaction at the time he entered into it, and that defendant had knowledge of such incapacity at that time, or was in possession of such information with respect thereto as would put a prudent person to the belief of such incapacity; for when the court found that defendant was not guilty of fraud or deceit in negotiating the trade, it in effect found that he acted in good faith, and took no advantage of Ehoades. Ehoades had not been declared insane upon inquest before the trade; hence the contract was not void, but at most only voidable. ‘Unless an insane person has been placed under guardianship, a contract entered into by such person is not absolutely void, but only voidable *462 and if made in good faith, and no advantage has been taken, it will be upheld.’ [Wells v. Mutual Benefit Ass’n, 126 Mo. loc. cit. 631.]”
It thus clearly appears that under the decisions in our State, at least, there is a difference between contracts of minors and of persons of unsound mind but not under guardianship, and that while an infant has an absolute right to disaffirm a contract made by him during his minority, a person of unsound mind but not in ward has no such absolute right, and that a court of equity will not set it aside if it was made in good faith (meaning without knowledge express or implied) by the other party, and if no advantage was taken of the insane person; and that in no case will relief be granted to such insane person or his representatives unless restitution is made of the benefits received by him from the contract and unless the status quo of both of the parties can be restored.
The doctrine contended for by the plaintiffs in the second ground of the motion to modify the decree, that they should not be required to make restitution of the benefits received as a condition precedent to a recovery of the land, because those benefits were lost or squandered by Jedediah, is therefore untenable, and the circuit court properly refused to modify the decree for this reason.
The third point presented by the motion to modify is the correctness of the allowance of $1,250 attorneys’ fees. The referee allowed $500 attorneys’ fees, in the condemnation case, and neither party excepted to the report in this respect. Nor indeed could there reasonably be any objection to this allowance. The condemnation case contemplated taking a strip off of the land, 30 feet wide and 400 feet deep, to make 23d street, and the remaining land was charged with about $1,400 in benefits in excess of the damages allowed." The attorneys defeated the proceeding, saved the strip of land and also prevented the $1,400 benefits being assessed against the property. A fee of five hundred dollars was reasonable. If *463 plaintiffs had owned the land they would have had to incur this expense to defend the property. In equity they are chargeable with the amount the defendants expended for this purpose.
The referee allowed $375 attorneys’ fee for successfully defending the tax suit for grading Locust street, in the trial court and in the court of appeals. The case, however, had been transferred to this court and was pending here at the time the decree was entered below in this case. The referee did not decide whether it was proper to allow the $375 claimed by defendants as attorneys’ fee for services yet to be rendered in that case. The defendants excepted to this finding, asserting that there was no authority for an allowance of $375 for attorneys’ fee to defend this case. The plaintiffs filed no exceptions. It is not clear whether the Donnells alone objected to this, or whether the bank also objected. At any rate the court allowed $375 for services yet to be rendered in that case, and of this the plaintiffs now complain. As this sum was allowed for the first time by the court in its final decree, and as plaintiffs raised the objection at once, the correctness of the ruling of the trial court in this respect is properly open to review here.
As the services had not been rendered and as they might never be rendered no present value could be put upon them, and as it did not appear that plaintiffs had incurred any binding obligation to retain the same attorneys for the trial of the case in the Supreme Court or would be liable in any event for the $375, or any other sum for such unperformed services in that case, there was clearly no equity in the charge of that sum against the plaintiffs in this case. As they were decreed the property and the defendant’s title was divested out of them, it remained a matter for the plaintiffs to take care of, whether that suit should be defended in this court or not, and if so who should render the service and at what price. The decree is erroneous in this respect, and will be modified here *464 by striking out $375 from tbe allowance to defendants for attorneys’ fee, leaving the amount so to be charged $875.
Tbe fourth point raised by tbe motion to modify involves tbe ruling of tbe court in reducing tbe value of tbe rents and profits charged against tbe defendants from tbe sum of $250 a year as recommended by tbe referee, to $120 a year.
There was much- testimony pro and con on this question. Tbe fluctuating values of property in that locality between February, 1877, and July, 1895, caused a great divergence of opinion as to what tbe real value of tbe rents and profits of this property was. Tbe trial court was in closer touch with the local conditions and with tbe witnesses than this court could be, and in this case we should defer to tbe judgment of that court, and not interfere with its action, especially as tbe testimony was so conflicting and there was enough evidence to support tbe finding, it being at best a mere matter of opinion and not involving tbe weight or effect of any positive evidence of a known or disputed fact. Besides tbe theory of tbe referee was too broad. The true rule is to ascertain tbe rental value in-its then condition — not in such condition as it might be put in by tbe improvement of tbe property — non constat that defendant was able to improve it.
Tbe judgment of tbe circuit court, so far as tbe same is affected by tbe writ of error sued out by tbe plaintiffs is concerned, is therefore modified so as to strike out tbe sum of $375 from tbe $1,250 allowed at attorneys’ fees, leaving tbe allowance $875, and tbe judgment is then affirmed, so far as it is affected by tbe writ of error. 'The defendants having also brought tbe case to this court by appeal and that case being now pending in this court and numbered 8322, tbe merits of that appeal and tbe ultimate judgment to be entered on the whole case, will be decided in that case. It is so ordered.
All concur.