RHOADES *et al.*;  CARTER, *Guardian*, v. FULLER, *Appellant.*

139   179
151   416
†151   457
151   467

Division Two, May 11, 1897.

1. **Insane Person:** LEGAL DISABILITY: GUARDIANSHIP: VOID AND VOIDABLE CONTRACTS. The deed of a person who has been adjudged insane and placed under guardianship is absolutely void. But a contract entered into by an insane person who has not been placed under guardianship, is not absolutely void but only voidable; and if made in good faith and no advantage has been taken, it will be upheld.

2. ———: SETTING ASIDE CONTRACTS. The general rule is that, in order to justify the setting aside of a contract of an insane person not under guardianship, it must appear that the contract was made with the knowledge of such incapacity or with such information in relation thereto as would cause a prudent person to apprehend such incapacity. But proof of the insanity at the time of the trade, in the absence of fraud practiced on him by defendant, or knowledge by defendant of the insane person's condition, will not justify setting aside the contract, although the guardian of such person offers to refund all moneys paid out by defendant on the land purchased by him.

3. ———: EVIDENCE. It was error for the trial court, in a suit to set aside a deed of an insane person, to admit the proceedings in the probate court which showed such person had been adjudged insane twenty days after he had made the deed.

*Appeal from Mercer Circuit Court.*—HON. P. C. STEPP, Judge.

REVERSED.

*Ira B. Hyde* and *H. G. Orton* for appellant.

(1) Inquest had in the probate court having been subsequent to the transaction in question, was not competent evidence of the insanity of Mr. Rhoades. *Bank v. Moore,* 78 Pa. St. 407; *Hovey v. Chose,* 83 Am. Dec. 517; *Jackson v. King,* 15 Am. Dec. 357. (2) In order to invalidate a deed executed by an insane grantor, it must appear that the grantor was subject to insane delusions at the time of the execution of the deed, and that the insane delusion influenced him to do the act, or that he had lost the power of intelligently reasoning. The incapacity must be such as prevented him from understanding the nature of the transaction entered into. 11 Am. and Eng. Ency. Law, 147, cases cited; *Jackson v. King,* 15 Am. Dec. 361; *Tolson v. Garner,* 15 Mo. 498; *Cutler v. Zollinger,* 117 Mo. 101; *Benoist v. Marvin,* 58 Mo. 307; *Hovey v. Chose,* 52 Me. 304; 83 Am. Dec. 514; *Wells v. Benefit Association,* 126 Mo. 637. (3) There was no evidence that the defendant had any knowledge or knew any fact that would lead him to suppose Rhoades was not competent to transact business. *Wells v. Mutual Benefit Ass'n,* 126 Mo. 637. (4) There is not a word of evidence that defendant took any advantage in the trade. Even admitting that the farm was worth more than Fuller gave for it, to one who could redeem it and pay off the incumbrances, yet to Mr. Rhoades, who could not do so,

the house and lot was worth more to him than the farm burdened with the incumbrances under which it was about to be sold. (5) Before a witness should be allowed to give his opinion as to the capacity of a party, it should appear that he had adequate opportunity of observing and judging of his capacity, and should give the facts on which he bases such opinion. *Baldwin v. State*, 12 Mo. 223; *Moore v. Moore*, 67 Mo. 192; *Crowe v. Peters*, 63 Mo. 434; *Sharp v. Railroad*, 114 Mo. 100; *State v. Williamson*, 106 Mo. 170; *State v. Crisp*, 126 Mo. 609. (6) The wife of plaintiff, who knew all the facts, and who must have seen the correspondence with the mortgagees and acquiesced in this trade, now seeks to rescind the trade which she could have prevented by speaking out at the time. So far as she is interested she is estopped. *Rash v. Fenton*, 29 Am. Rep. 413, and cases cited on page 416.

*H. J. Alley* and *M. Read* for respondents.

(1) The inquest in the probate court was competent, *first*, to prove that he was under guardianship; *second*, to prove that he was insane at the time of the inquiry. Besides the objection to the testimony was withdrawn by the defendant. (2) As to the opinion of non-expert witnesses, we submit that any person acquainted with the insane party, that from his acts and conduct knows his condition, may give their opinion as to his sanity or insanity. *State v. Bryant*, 93 Mo. 299; *Crowe, Adm'r, v. Peters*, 63 Mo. 429; *Appleby v. Brock*, 76 Mo. 314. (3) A court of equity will scrutinize closely and carefully all instruments executed or brought about by persons standing in the relation of parent and child, guardian and ward, physician and patient, attorney and client, and the various relations in which one party is so situated as to exercise control

over the will, conduct and interest of another. *Harvey et al. v. Sullens*, 46 Mo. 147; *Garvin, Adm'r, v. Williams et al.*, 44 Mo. 465. (4) In order to avoid the contract of an insane person, it is not necessary that he be a lunatic or an idiot, but only that he be so mentally weak as not to be able to comprehend or know the value of the property conveyed. 2 Pomeroy's Equity Jurisprudence [2 Ed.], secs. 947, 948; *Brinkman v. Rueggesick*, 71 Mo. 553. (5). A person purchasing property of an insane person, innocently and in good faith, paying a due compensation therefor, will be protected, provided the insane party is not able to put him in the same condition as before the contract, but otherwise where the wronged party is able to and offers to rescind the trade and return the property. 2 Pomeroy's Equity Jurisprudence [2 Ed.], secs. 946, 947, 948; 1 Devlin on Deeds, secs. 69, 75, 76; Bishop on Contracts [Enlarged Ed.], secs. 964, 973; 11 Am. and Eng. Ency. Law, page 136, and note; 1 Parsons on Contracts [8 Ed.], page 386; *Wells v. Mutual Benefit Association*, 126 Mo. 630. In this case the proof shows that the plaintiff was dealing in the transaction with both Fuller and Hyde, and the testimony of plaintiff's witnesses show that plaintiff lost about $600 in the trade.

BURGESS, J.—This is a suit in equity by Jesse B. Rhoades, who sues by his guardian, T. I. Carter, and Rebecca Rhoades, the wife of said Jesse, against defendant, to rescind the contract for the exchange of a farm in Mercer county, Missouri, conveyed by said Rhoades and wife to said defendant Fuller for a house and lot in Princeton, in said county, upon the ground of the insanity of said Rhoades at the time of the trade or exchange.

The petition alleges that Rhoades is an insane per-

son and that before the commencement of this suit T. I. Carter had been duly appointed and qualified as his guardian.

That on November 1, 1893, plaintiff Rhoades was the owner of one hundred and twenty-five acres of land in Mercer county, which was incumbered by a mortgage of $1,000 to Deering & Company and the Omaha Loan and Trust Company. That the said Rhoades had long been an insane person, that the defendant and his attorney falsely represented to said Rhoades that his farm was about to be sold under the said mortgages, and by said representations induced Rhoades and his wife to exchange said lands subject to said mortgage for a house and lot in Princeton, which house and lot it is alleged was falsely represented by the defendant to be of the value of $750, when in fact it was not worth more than $150. That the said Rhoades was at the time of making the trade incompetent to transact business by reason of insanity.

It also alleged that the defendant with the intent to cheat and defraud plaintiff Rhoades and to get his land at less than its value, falsely and fraudulently stated and represented to him that said land would be sold within two days thereafter, under said mortgages, unless he arranged to pay them off.

The petition alleges that plaintiffs offered to reconvey the house and lot to defendant, to refund to him all moneys paid out by him on the mortgages, and prayed that the contract for the exchange of the properties, and the deed from Rhoades and wife to defendant for the farm, be canceled.

The answer denied the allegations in the petition, and alleged that at the time of the exchange of the farm for the house and lot there were three mortgages or deeds of trust on said farm, two of which, and the interest on the other, were then past due, and that said

Rhoades stated to the defendant that the same were about to be foreclosed.    That defendant on the twenty-fifth day of November, 1893, paid Deering & Company on their said mortgage the sum of $32.34, being the amount then due on the same, and on the thirteenth day of November, 1893, he paid on the Omaha Loan and Trust Company deed of trust, interest due thereon amounting to $30.40.    That he also on the sixteenth day of November, 1893, paid the principal and interest of another mortgage, held by the Omaha Loan & Trust Company amounting to $81, and at the request of said Rhoades he paid a judgment against him amounting to $4.39.

Rhoades bought the land in question in 1890 for $1,400.    He borrowed nearly all of the money to pay for it, giving a mortgage on the land to secure the borrowed money.    At the time of the trade there was about $1,000 against it.    There was one mortgage for about $80; and the interest on the mortgage to the Omaha company, and also the principal mortgage which became due on account of default having been made in the payment of interest when it became due, all due at the time of the trade.    The holders of the mortgages were demanding payment, and the Omaha company had on November 1, 1893, notified Rhoades that unless the amount due upon its loan was paid within thirty days or earlier, the land would be advertised for sale as provided for in such circumstances under their mortgage.    Rhoades then began to look around for a purchaser for his farm, and through E. C. Hyde arranged a meeting with defendant and finally made the trade with him.

Rhoades made a personal examination of the house and lot, and agreed to take them in exchange for the land, defendant assuming the payment of the incumbrances against it.    The amount paid out by defend-

ant, up to the time of the institution of this suit on the liens, was $191.91. This, however, included other liens upon the land, not known to exist at the time of the trade, amounting to the sum of $43, which defendant paid off, and plaintiff Rhoades executed to him a mortgage on the house and lot to secure the payment of that sum.

The evidence as to the values of the properties exchanged was conflicting. The value of the farm was variously estimated by the witnesses at from $1,200 to $2,000, and the house and lot at from $125 to $400.

Rhoades had for three years next preceding the trade lived in Mercer county, and during that time had managed his farm and transacted his business, and, while somewhat eccentric, manifested no evidences of insanity, until about the time of, or shortly before, the trade. A few days thereafter, to wit, November 22, 1893, his wife and co-plaintiff, Rebecca Rhoades, filed an information with the judge of the probate court of said county, alleging that he was of unsound mind, and incapable of managing his own affairs, and asking that the condition of his mind be inquired into by a jury. Thereafter, on November 27, 1893, an inquest was held by said court and he was found to be insane, and so declared by said court, and T. I. Carter was then, by an order of record of said court, appointed his guardian, and duly qualified as such.

The trial court made a finding of fact as follows: "The court finds that the defendant was not guilty of any fraudulent act or deceit in negotiating the trade for the plaintiffs' farm, and on the issue of fraud raised by the pleading the court finds for defendant."

Notwithstanding this finding, the court rendered judgment for plaintiffs setting aside the exchange of properties, and adjudging the costs against defendant.

After unsuccessful motions for a new trial, and in arrest defendant appealed.

The first assignment of error is with respect to the action of the court in admitting in evidence over the objection of defendant the inquest had in the probate court, wherein Jesse B. Rhoades was adjudged to be of unsound mind and incapable of managing his own affairs.

It is insisted by plaintiffs that the objection was withdrawn, and the objection thereby waived. The record shows that when plaintiffs offered that record in evidence, defendant objected to its being read, for the purpose of showing that Rhoades was insane at the time of the trade, which was something over twenty days before the time of the inquiry, and that the objection was overruled, and the record read in evidence.

That after the record had been thus read, plaintiffs again offered it in evidence for the purpose of showing that Rhoades was insane at the time of the inquest, to which defendant objected, but withdrew the objection. When the record was read the first time it was for an entirely different purpose than that for which it was thereafter offered in evidence, and the first objection was not, we think, withdrawn by the withdrawal of any objection to its being again read for the purpose of showing Rhoades to have been insane at the time of the inquest.

It is claimed by defendant that, as the inquest was held subsequently to the exchange of the properties, it was not competent evidence against defendant, and that the court committed reversible error in admitting it.

The record was clearly inadmissible. The inquest was a judicial proceeding held after the trade. Defendant was not a party to it, had no connection with it, and his rights previously acquired could in no possible

way be affected thereby.   It raised no presumption as against him of Rhoades' insanity at the time of the trade, which was consummated something over twenty days before the date of the inquest.   It is no uncommon occurrence for persons who have never manifested any evidences of insanity to become violently insane within a very short space of time.   Neither party claimed under the proceedings in the probate court, and whether Rhoades was sane or insane at that time, could in no way affect defendant's rights.   *Hovey v. Chase*, 52 Me. 304; *Jackson v. King*, 4 Cowen, 207.

The court found that defendant was not guilty of any fraud or deceit in negotiating the trade, and that finding is amply supported by the evidence.   Assuming this position to be correct, then, in order to justify an affirmance of the judgment setting aside the trade, it must appear from the evidence that plaintiff Rhoades was insane, or incompetent from the want of mental capacity to understand the nature of the transaction at the time he entered into it, and that defendant had knowledge of such incapacity at that time, or was in possession of such information with respect thereto as would put a prudent person to the belief of such incapacity; for when the court found that defendant was not guilty of fraud or deceit in negotiating the trade, it in effect found that he acted in good faith, and took no advantage of Rhoades.   Rhoades had not been declared insane upon inquest before the trade; hence the contract was not void, but at most only voidable.

"Unless an insane person has been placed under guardianship, a contract entered into by such person is not absolutely void, but only voidable, and if made in good faith, and no advantage has been taken, it will be upheld."   *Wells v. Mutual Benefit Ass'n*, 126 Mo. loc. cit. 637.   "And so if a purchase is made in good faith without any knowledge of the incapacity, and no

advantage has been taken of the party, courts of equity will not interfere to set aside the contract if injustice will thereby be done to the other side, and the parties can not be placed *in statu quo*, or in the state in which they were before the purchase." 1 Story's Equity Jurisprudence [13 Ed.], p. 242; *Blount v. Spratt*, 113 Mo. 48; 2 Pomeroy on Equity Jur., sec. 946. It may be stated as a general rule that, in order to justify setting aside a contract of an insane person, not under guardianship, on the ground of insanity, it must appear that the contract was made with the knowledge of such incapacity, or such information with respect thereto as would put a prudent person to the belief of the incapacity. *Matthiessen, etc., Co. v. McMahon's Adm'r*, 9 Vroom, 536; *Bank v. Moore*, 78 Pa. St. 407. But the deed of such person after being placed under guardianship will be absolutely void. *Rannells v. Gerner*, 80 Mo. 474, and authorities cited; *Wells v. Mutual Benefit Association*, 126 Mo. 630.

There was no evidence whatever that Rhoades did not understand perfectly well, when he entered into it, the nature of the contract in its entire scope and meaning, which he now, by his guardian, seeks to set aside and have canceled. At the time he entered into it he was being hard pressed for money. The debts secured by mortgages on his land, amounting, including interest, to over $1,100, were due; he had been notified by some of the lienholders that unless their debts were paid by the thirtieth of November, 1893, the land would be advertised for sale; he had been trying to borrow the money and had failed; and by his request Mr. E. C. Hyde approached defendant with regard to the purchase or trade, and he consented to meet Rhoades, and talk over the matter, which he did, and after Rhoades had in person examined the house and

lot traded to him, the terms and conditions of the trade were agreed upon, and the trade consummated by the exchange of deeds for the respective properties. It appeared to be the best that Rhoades could do and the transaction throughout conducted with seeming fairness.

The consideration received by Rhoades was not so inadequate as to justify setting aside the exchange upon that ground alone. Defendant had no notice whatever of any mental derangement on the part of Rhoades, nor did he solicit him to make the trade, nor was there any influence used in defendant's behalf in order to induce him to do so. Under such circumstances Rhoades, even if insane, was not entitled to have the trade rescinded, although he offers to, and is willing to refund to defendant all moneys paid out by him on said land, and to reconvey to defendant the house and lot received by him in exchange therefor. Proof of the insanity of Rhoades, even if shown to exist at the time of the trade, in the absence of fraud practiced on him by defendant, or knowledge by defendant of his condition, will not justify setting aside the contract. *Bank v. Moore, supra.* But the evidence does not, we think, show that Rhoades was insane at the time of the contract, nor that he was *non compos mentis.*

In order to entitle plaintiffs to the relief sought the burden was upon them to show the existence of one of these facts, and this they did not do. Indeed, it is inexplicable why his wife and co-plaintiff, who knew him better than any other person, and all about the trade, and was a party to it, if in fact he was insane or incapable of attending to his own business affairs, and of comprehending the nature of the contract, did not so inform defendant at the time, and refuse to become a party to the contract for that reason, if no other.

The conclusion reached renders it unnecessary to pass upon other questions raised by counsel for defendant in their brief.

The judgment is reversed. GANTT, P. J., and SHERWOOD, J., concur.