Ralph **COHEN** and Marilyn J. Cohen,
Plaintiffs-Respondents,

v.

**John E. CRUMPACKER,** as Guardian of
the Estate of Mary M. Crumpacker,
Defendant-Appellant.

No. KCD 29707.

Missouri Court of Appeals,
Western District.

July 31, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 4, 1979.

Application to Transfer Denied
Oct. 10, 1979.

Robert F. Sevier, Roger G. Burnett, Liberty, for defendant-appellant.

Lyle E. Spillman, Trenton, for plaintiffs-respondents.

Before SHANGLER, P. J., WASSER-STROM, C. J. and CLARK, J.

CLARK, Judge.

At issue in this appeal is the decree of the trial court ordering specific performance of a contract for the sale of a farm consisting of some 240 acres in Putnam County. That contract was made April 17, 1976 between respondents as buyers and appellant as seller. On the contract date, appellant was acting on behalf of his mother, the owner of the land, pursuant to a general power of attorney she had executed September 16, 1974 and which was filed of record in Put-

nam County September 27, 1974. By reason of events subsequently described, appellant appears in the action as guardian of his mother's estate and appeals the judgment ordering completion of the sale according to the contract terms.

Appellant asserts three grounds on which he claims the action of the trial court to be erroneous, (a) that appellant should not have been obligated to proceed to trial without counsel, (b) that the contract was not specifically enforceable because incomplete in its terms, and (c) that the circuit court did not have jurisdiction to order sale of property of an incompetent ward. Affirmed.

By the terms of the real estate sale contract, a printed form with blanks for particular details, the sale was to be closed May 20, 1976 at the office of the realtor. A portion of the purchase price, $84,000.00, was paid at the signing of the contract, additional amounts were payable at closing and on December 1, 1976 and the financed balance of $59,640.00 was to be evidenced by a promissory note payable to the seller by installments during a term of eleven years with interest at eight percent. The debt was to be secured by a first deed of trust on the property and, in the language of the printed contract, was to be "in a form approved by seller."

At a date undisclosed in this record, appellant's mother, Mary Crumpacker, was apparently adjudicated an incompetent by proceedings in the Probate Court of Clay County. No information has been supplied as to the nature of the infirmity, mental or physical, which precipitated this adjudication, the onset and prior duration of the disability, nor may it be said with certainty whether appellant was appointed guardian of his mother's person or of her estate or both. For purposes of this opinion, we assume, as did the parties before the trial court and in their briefs here, the meager

factual ingredients of Mary Crumpacker's adjudication on or about May 20, 1976 and the concurrent appointment of appellant as guardian.

On or prior to the contracted date for closing the sale, May 20, 1976, appellant informed the realtor that closing would be delayed because appraisal of the property and prior approval of the sale by the probate court would be required. After several requests during subsequent months that appellant proceed in whatever manner was necessary to complete the sale were unavailing, respondents commenced this action October 21, 1976. Suit was brought against appellant individually as agent for Mary Crumpacker under the power of attorney as described and as noted in the sale contract.

Appellant employed counsel who filed an answer to respondent's first petition. In addition to a general denial, the answer alleged that the contract was not binding because the power of attorney had been rendered void by reason of Mary Crumpacker's incompetency on the contract date. No reference was made to the proceedings in the Clay County Probate Court, the adjudication of incompetency or appellant's appointment as guardian, all of which apparently had occurred some six months earlier.

Knowledge of the probate court action presumably reached respondents at a later date and on May 2, 1977 they filed an amended petition naming appellant as defendant in his representative capacity as guardian and describing by case number the estate in Clay County.[1] On the eve of trial, the original petition naming appellant as agent was dismissed and the action proceeded against appellant as guardian.

On the date of trial, July 8, 1977, confusion attended the status of appellant's attorneys. Counsel who had been retained originally and who had filed the answer mentioned above was present throughout

The transcript includes no return of service of the amended petition on appellant as guardian. Actual receipt of the pleading is confirmed by the answer filed on behalf of appellant individually July 6, 1977. To the extent that any defect in process may have existed in the re-

casting of appellant's status as defendant under the amended petition, such was waived by appellant's subsequent general appearance and participation in the trial without objection on this ground. *Germanese v. Champlin*, 540 S.W.2d 109 (Mo.App.1976).

the trial, but he disclaimed ability to represent appellant as guardian because of undisclosed grounds of potential conflict of interest. The attorney who had represented appellant in other matters and who, inexplicably, filed an answer on behalf of appellant as guardian the day following the trial, declined to attend the trial although personally contacted by the court by telephone on the morning of trial. No record appears of any request for continuance by either attorney.

As the case was called for trial, a colloquy ensued among appellant, his individual attorney, respondents' attorney and the court. Appellant at that time made no request for a continuance, indicated that he would represent himself and did so, cross-examining witnesses and testifying in his own behalf. Counsel on this appeal first entered the case after judgment had been rendered adverse to appellant.

▮ In charging the trial court with error for conducting the trial of this case under the circumstances described, appellant contends that his right as a civil litigant to representation by counsel was denied and that the consequent failure of due process is violative of the Missouri Constitution, Art. I, § 10. Implicit is the contention that in civil litigation the court is obligated to provide counsel for a party or to suspend proceedings sua sponte until counsel does appear. No authority so holding is cited by appellant.

The case of *Magerstadt v. LaForge*, 303 S.W.2d 130 (Mo.1957), cited by appellant contrasts sharply on the facts with the present case. In *Magerstadt,* plaintiff's counsel was permitted to withdraw and substitute counsel who attempted to enter their appearance less than sixty days thereafter were denied leave except upon agreement to immediate trial. Refusal of this condition to appearance resulted in a dismissal of plaintiff's case by the court. The case stands for the proposition that litigants are entitled to representation by counsel of their own choosing and that need to expedite the court's docket must be applied with care to avoid sacrifice of due process.

Appellant here was represented by counsel, one attorney being present, although not participating, throughout the trial. The other attorney, contacted on the morning of trial by the court, indicated he did not expect to attend. No request for continuance was made to the court by appellant or either of his attorneys although full opportunity to do so was available both before and after appellant at the suggestion of the court consulted with his attorney present as to the situation in the case. Appellant was content to handle the case himself at the time as indicated by the following testimony given by appellant at a hearing on his motion to set aside the decree:

"Q. So you said you were going to try it then?

A. I said I was going to try to do something. I couldn't see how I could lose.

Q. Did you then agree to have a hearing on this matter?

A. I guess I did.

Q. You did not request a continuance from the Court?

A. No, I didn't."

Appellant was entitled to try his own case and, having done so, he may not now complain that he should have received some indulgence particularly available because of his status as a layman. *Commerce Bank of Kansas City v. Conrad,* 560 S.W.2d 388 (Mo. App.1977). The suggestion that some duty devolved upon the court in these circumstances to refuse to hear the case or, having done so, to set aside its decree is not tenable.

Although not directly addressed in appellant's brief, the transcript suggests and on argument appellant contended that the decree of specific performance was fundamentally unfair in that the proceedings in the trial court were essentially by default and that no opportunity had been given appellant to present the defense which would have resolved the cause in his favor. That defense, alleged generally in appellant's after trial motion, was that incompetency of Mary Crumpacker had, by operation of law,

terminated appellant's power of attorney prior to the probate court adjudication and before the date of the real estate contract in question. Such, of course, was the defense alleged at the outset in appellant's answer filed to the original petition, albeit unsupported then as now by any allegations of fact.

Appellant had not, it is true, filed any answer as guardian to respondents' petition as of the commencement of trial and was therefore in default of the requisite pleading. In the manner of presentation of the case at trial, however, any procedural impediment occasioned by the absence of an answer was ignored. No attempt was made to utilize Rule 74.045 for entry of a judgment on liability issues by default but rather respondents established the factual elements of their case by proof and submitted their witnesses to cross-examination. So too was consideration given to appellant's evidence supporting his affirmative defense without objection to the absence of a relevant pleading.

Appellant's characterization in his after trial motion of the judgment in this case as an "Interlocutory Default Judgment" is erroneous. In fact, the motion must necessarily be regarded as a motion for new trial or to amend judgment pursuant to Rule 73.01 and subject to principles governing such motions in court-tried cases of an equitable nature.

■ The judgment entered by the trial court in a bench trial is presumptively correct and the party who poses the challenge has the burden of demonstrating the judgment to be erroneous. *Crossgates Home Ass'n v. Blomquist*, 537 S.W.2d 429 (Mo. App.1976). In his motion, appellant alleged that the real estate contract in question was unenforceable because Mary Crumpacker's "mental condition" had ended authority under the power of attorney at least a year before the contract date and that evidence of this disability had not been presented because of the lack of counsel at trial and appellant's inability to articulate the defense. The motion urged that the judgment be set aside presumably, although not so stated, to provide appellant a new trial.

Hearing was granted appellant on his motion and he appeared with counsel and testified. No evidence, however, was offered to show the present or past nature of Mary Crumpacker's mental condition, the objective symptoms which may have been manifest, treatment or examination by physicians or any other facts from which it could have been determined when and to what extent mental disability had incapacitated Mary Crumpacker in conducting her affairs. In short, the dearth of evidence on appellant's behalf to support his conclusionary allegations was the same at the motion hearing as had existed at the time of trial.

In seeking to overturn the result of the prior trial, appellant was required to allege and offer minimal proof of facts, which, if established at a subsequent trial, would demonstrate at least an arguable theory of defense. *Williams Energy Co. v. Tracy Truck Leasing*, 562 S.W.2d 765 (Mo.App. 1978). Appellant here not only failed to allege or prove any details as to the date of onset, nature or extent of Mary Crumpacker's mental infirmity, but he also erroneously assumed that a condition of incompetency existing in fact prior to adjudication automatically avoided the real estate contract.

■ While a contract made by one under guardianship by reason of incompetency is void, a contract made prior to adjudication but while the person is under mental disability is only voidable. *McKenzie v. Donnell*, 151 Mo. 431, 52 S.W. 214 (1899); *Evans v. York*, 195 S.W.2d 902 (Mo.App. 1946). In seeking to avoid a contract on the ground that the contracting party was incompetent, it must be alleged and proved either that the other party was aware of the mental deficiency and took advantage of it or, having not had such knowledge, that restoration of the status quo be offered and be capable of accomplishment. *State v. Shain*, 349 Mo. 460, 162 S.W.2d 255 (Mo. 1942). Avoidance of the contract through intervention of equitable relief for the benefit of one under mental disability prior to adjudication normally requires other inequi-

table incidents, inadequacy of consideration alone being not necessarily sufficient. *Wigginton v. Burns*, 216 S.W. 756 (Mo. 1919).

█ Appellant here failed to prove at trial and failed to allege in his after trial motion any facts which would have warranted equitable relief from enforcement of the real estate sale contract. Most importantly, no evidence was offered to prove that Mary Crumpacker was actually of unsound mind at any time prior to her adjudication or that appellant or respondents had knowledge of such disability at the date the power of attorney was utilized to execute the contract of sale. Further, no claim has ever been made, even in generality, that the price and terms of sale of the farm were other than fair nor does the record disclose or suggest any reason why the interests of appellant's mother would be served by avoiding the contract. In short, appellant failed by his new trial motion to demonstrate that if an opportunity were provided, he could support any reasonably arguable basis for obtaining equitable relief from enforcement of the contract. Under such circumstances, the motion was properly denied.

In his second point, appellant contends that specific performance of this contract may not be ordered because essential, definite terms are lacking. In particular, appellant refers to language of the contract requiring approval by the seller of the deed of trust form. Because a decree would impose on appellant a deed of trust fashioned by the court without appellant's freedom of choice to reject the form, appellant argues that the decree violates the prohibition against judicially supplied contract deficiencies and cites *P.R.T. Investment Corp. v. Ranft*, 363 Mo. 522, 252 S.W.2d 315 (1952) and cases there cited.

█ The essential terms of a contract for the sale of real estate entitling the purchaser to specific enforcement are: the parties, the subject matter, the promises upon both sides, the price and the consideration. *Wilkinson v. Vaughn*, 419 S.W.2d 1 (Mo.1967). A contract containing the essen-

tial elements is not incomplete because failing to express matters of performance usually found in such instruments and functioning to attain the objective of the contract. *Ray v. Wooster*, 270 S.W.2d 743 (Mo. 1954). A contract condition which qualifies a duty of performance by a party does not make the existence or validity of the contract hinge on the condition. 17A C.J.S. *Contracts* § 338.

█ In the present case, approval by the seller of the form of the deed of trust was not required before a valid contract of sale resulted, it was merely an act to be performed in fulfillment of the ultimate contract objective, sale of the property and payment of the purchase price. This situation is unlike that in *P.R.T. Investment Corp. v. Ranft, supra*, in which a contract for sale of improvements included a condition that the contract was subject to acceptance by the purchaser of the seller's lease on the ground. The latter amounts to a condition which must be performed before the parties have completed agreement and before liability for performance attaches. Approval of a deed of trust form is on entirely different ground and is a routine element commonly attaching to the closing of any sale of real estate in which a loan balance is secured by a purchase money interest in the land. Requirement that the subject sale be completed by giving a deed of trust engrafts no new terms on the contract and orders nothing not routinely attendant upon normal closing of such transactions.

Finally, appellant attacks the jurisdiction of the court to order performance of the sale agreement contending that exclusive jurisdiction over property of the incompetent ward was in the Probate Court of Clay County. It is uncertain from appellant's point of error and brief as to whether he contends that the circuit court lacked subject matter jurisdiction over the property of the ward or personal jurisdiction over the guardian, but neither assertion being valid, it is unnecessary further to refine the issue.

■

From the fact of adjudication alone, the otherwise valid contract of sale is not impugned and the liability of the contracting party is not affected. This follows for the reason that adjudication of incompetency is only prospective in application and is inadmissible as evidence to show prior mental disability. *Rhoades v. Fuller*, 139 Mo. 179, 40 S.W. 760 (1897). In fact, there is a presumption of sanity preceding adjudication with the burden of proof being on the party who seeks to show want of mental capacity to contract. *Boydston v. Bank of Camden Point*, 141 S.W.2d 86 (Mo.App. 1940). At the outset, therefore, respondent's petition and proof of the real estate sale contract executed by appellant under the power of attorney established a prima facie case entitling respondents to judgment. Allegation that subsequent adjudication had placed the ward's property under jurisdiction of the probate court is unavailing to oust the circuit court from jurisdiction over the guardian as a specific duty of a guardian is to defend actions against his ward. Section 475.130, RSMo 1978.

No provision of the probate code in effect prior to January 2, 1979 confers jurisdiction on the probate court to determine suits on petition for specific performance to enforce a contract made by the ward while sane. In contrast, Section 473.313, RSMo Supp. 1955 provides for concurrent jurisdiction between the probate court and circuit court if the action be one to enforce a similar contract made by one now deceased. As the probate court was, at the time in question, a court of limited jurisdiction, the absence of statutory authority militates in favor of concluding that the probate court lacked jurisdiction to entertain this cause. At most it is arguable that Section 475.020, RSMo 1978 could operate to transfer to guardianship estates those provisions above cited applicable to decedents' estates creating concurrent jurisdiction in probate and circuit courts in cases for specific performance of contracts.

Appellant notes that Section 475.-135, RSMo Supp.1959 restricts contracts binding on the estate of the incompetent to those entered into with the approval of the court. From this he apparently suggests that pre-emptive jurisdiction over any existing contracts made by an incompetent is the immediate consequence of adjudication in the probate court. Consistent with authorities previously cited, such is not the effect of the quoted section or of Section 475.345, RSMo Supp.1955, neither of which is applicable to contracts entered into by an incompetent before adjudication. Such contracts are not void but voidable on the grounds and in the manner earlier discussed.

The judgment of the trial court is affirmed.

All concur.