**Ralph MASONER, Appellant,**

v.

**BATES COUNTY NATIONAL BANK, Respondent.**

**No. WD 41430.**

Missouri Court of Appeals, Western District.

Dec. 12, 1989.

Peggy O'Hare, North Kansas City, for appellant.

Stephen K. Nordyke, Butler, for respondent.

Before MANFORD, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

This suit by Ralph Masoner sought rescission of a transaction entered into by Masoner with respondent bank in March, 1985. The action was based on Masoner's assertion that he was under a mental disability at the time the contract was made, that the bank breached a fiduciary duty owed Masoner on account of its knowledge of Masoner's incompetence and that Masoner should be restored to all things lost in the venture. The trial court found the issues against Masoner after a bench trial and he appeals.

■ No findings of fact were made by the trial court. We therefore restate the facts under the rule that where no specific findings are made by the trial court, all controverted facts are considered to have been found in accordance with the result reached. *Estate of Ferling*, 670 S.W.2d 109, 110 (Mo.App.1984).

Early in 1985, Masoner was living in a house which he had occupied with his mother for many years up to her death six years before. The house had not been maintained and in consequence, had become unfit for human habitation. Masoner's next door neighbors, Henry and Elizabeth Schmidt, together with another neighbor, Jeannie Sherman, were concerned about Masoner's well being and they, together with others in the community of Amoret, contacted the respondent bank through its president, William Gepford, to inquire if anything could be done to provide Masoner suitable housing. At the time, the bank had a mobile home which it had repossessed and was holding for sale. Masoner and the Schmidts examined the mobile home and all agreed it would provide the answer to Masoner's need.

The bank was willing to sell the mobile home to Masoner for the balance which was owed by the former owners, $1850.00, but Masoner had no money to pay the

purchase price or the expense for preparing a site on Masoner's land to locate the home, or moving expenses. Masoner did have a monthly social security check and the bank agreed to advance the full cost for the project upon an agreement that Masoner would repay the loan in installments of $100.00 per month for five years with the remaining principal balance to be due then. Moving and site preparation costs were not known and accordingly, Gepford prepared a note for $10,000.00 which Masoner signed.

At about the time the first note was signed in March, 1985, an accompanying agreement was signed by Masoner and Gepford. The agreement generally authorized Gepford to oversee the clearing from Masoner's land of the remains from the earlier dwelling to install a concrete pad for the trailer. Masoner also agreed to the establishment of his account with respondent bank and to use the advice and opinions of the Schmidts, the Shermans and Gepford in connection with Masoner's acquisition of the mobile home. Mrs. Schmidt was with Masoner when he signed the note and agreement and approved the arrangement.

The project went forward and the bank advanced $1468.00 as the cost of clearing Masoner's lot and installing the concrete pad, $2275.00 for moving and erecting the trailer at the new location and miscellaneous expenses for plumbing and other services and supplies. The total cost for all items, including the price for the mobile home itself, amounted to $6905.59. Masoner ultimately signed a note for this amount on June 11, 1985 at which time he had already occupied the trailer as his residence.

At some point in 1985 or 1986, Masoner began to experience problems with a leak in the roof of the trailer. There had been some water spots on the ceiling when Masoner first looked at the home and when Gepford observed this, he had a sealant applied before the trailer was delivered to Masoner. In 1986 and during the following two years, the invasion of moisture into the home increased, apparently without any attempt at repair, and severe deterioration and disintegration resulted. Neither Masoner nor any of his "advisors" contacted the bank about the problem except for one call Masoner testified he made in 1986 to a clerk at the bank.

During the years in question, Masoner regularly allowed a number of persons to occupy the mobile home with him including Elizabeth Schmidt's daughter, Helen, who lived there with her three children in late 1985, December of 1986 to March, 1987 and from October, 1987 to February, 1988. Also in residence at various times were Jay Richmond, Helen's boyfriend, Carl Cook and Alex Boyer. Those who visited the trailer observed poor housekeeping and, on at least one occasion, the occupants were engaged in a water fight.

Prior to the commencement of this suit, the Schmidts and the Shermans had made no protest or report to the bank regarding any problem with the mobile home and no one made any effort to contact Gepford or request assistance in repairing the alleged leaks in the trailer roof.

Masoner's cause of action as set out in his first amended petition appears to commingle and confuse several legal theories, a circumstance which has not been remedied in the brief on appeal. As best the claims may be identified, the contentions seem to be: (1) that mental incapacity rendered Masoner incompetent to contract with the bank and therefore the note and mortgage should be set aside, and (2) that a fiduciary relationship existed between the bank and Masoner, which relationship was exploited by the bank to its own advantage.

Considering the first alternate theory, Masoner contends the trial court erred when it did not declare the contract void on the ground of Masoner's diminished mental capacity. In the language of the brief, "The trial court erred in failing to void the contract between plaintiff and defendant because plaintiff was incompetent to enter said contract."

The quoted statement of the point, which merely takes exception to the result in the case, violates Rule 84.04(d) in that it fails to state wherein and why it is claimed the

trial court erred. Recognizing that there were disputed facts in the case which the trial court necessarily resolved in favor of respondent bank, the point has substance only if it be deemed to contend that undisputed evidence established appellant's right to recover as a matter of law and that a contrary judgment was therefore erroneous. We look to the argument portion of the brief to ascertain what those facts are claimed to be and what their effect necessarily was on the result.

The brief focuses on two items of proof which appellant labels as judicial admissions. According to him, these admissions relieved him of the obligation to prove the linchpin of his case, his asserted mental incapacity. The first admission was the agreement in which Masoner undertook to "use the opinions of Jenny and Vic Sherman, Elizabeth and Henry Schmidt and Bill Gepford" in the transaction. The second was a pleading filed in the case by Gepford in which he suggested to the court that a next friend or guardian ad litem be appointed for Masoner to represent his interests in the suit.

We will examine each as bearing on Masoner's mental capability to contract and the issue on appeal of whether the evidence required a judgment for Masoner as a matter of law. In this regard, it is appropriate to note that Masoner introduced no other evidence showing his mental capacity to have been medically, clinically or judicially determined to have been impaired. To the contrary, there was evidence of other transactions and activities by Masoner showing his participation in his own affairs sufficient to support the trial court's judgment, if the evidence on which Masoner relies did not constitute binding admissions compelling an opposite result.

■ Considering first the probative effect of the agreement Masoner signed at the outset of the transaction, the terms do recite the general understanding that Masoner will be assisted in preparing a site to locate the trailer, that such improvements as were in place on Masoner's property are of no value and will be burned or buried and that the work must move forward as soon as possible. Included is the recitation that Masoner needs advice on the project and he will use the opinions of the persons stated. The document certainly suggests a cooperative effort in which others as well as Masoner are to participate. The claim that the agreement conclusively proves Masoner was mentally incompetent is untenable.

■ Mere mental weakness or dullness of perception is not enough to require that a contract be set aside. It is the burden of a plaintiff who seeks to avoid a contract on grounds of incompetence to prove by clear and convincing evidence that at the time the contract was made, he lacked sufficient mental capacity to understand, in a reasonable manner, the nature and effect of the act in which he engaged. *Allen v. Kelso*, 266 S.W.2d 696, 702 (Mo.1954); *McElroy v. Mathews*, 263 S.W.2d 1, 10 (Mo.1953).

Here, the most which could be said of the evidence of the agreement was that it portrayed Masoner as a person of limited experience in the details necessary to relocation of the trailer. It did not conclusively prove Masoner to have been mentally incompetent to understand the nature of the purchase. Moreover, the complaint Masoner made in the suit was not over any detail which the subject agreement addressed, but because the roof of the trailer developed leaks. The proof of the agreement was some evidence the trial court was entitled to consider in passing on Masoner's claim of mental incapacity but it was not a binding admission dictating a judgment for Masoner.

■ The second item of proof which Masoner argues was determinative of his suit was a pleading Gepford filed himself as a then defendant in the case. On advice of his attorney, Gepford filed a Suggestion Of Mental Infirmity asking that the court appoint a "next friend/guardian ad litem" for Masoner to care for Masoner's interests in the case. The basis for the motion was Gepford's representation that Masoner was incapable by reason of mental infirmity to conduct his own affairs. The filing date of the suggestion was August 29, 1988. Masoner relies on this pleading as a judicial

admission of Masoner's incompetence which, absent other proof, required that the court order the contract voided.

The first problem with this argument is that the pleading was filed by Gepford as an individual defendant and not as a representative of the bank. Gepford was dismissed from the case before trial. There is no indication that the bank or any bank representative joined in the motion for appointment of a guardian ad litem for Masoner. Indeed, there was no proof offered by Masoner to show that Gepford acted on behalf of the bank in any of the dealings with Masoner as to transportation of the mobile home to Masoner's property, the razing of the former dwelling or the preparation of the site on which to locate the trailer. These activities appear to have been outside the scope of the sale and loan transaction and perhaps account for the inclusion of Gepford as an individual defendant. In any event, the pleading Gepford filed in the case as an individual defendant did not constitute a judicial admission on the part of the co-defendant bank. *See Gordon v. Oidtman*, 692 S.W.2d 349, 355 (Mo.App.1985).

■ Even were the pleading to have been considered a judicial admission of Masoner's incompetence at the time it was filed, that date was more than three years after the date of Masoner's contract to purchase the mobile home. It therefore was not probative of Masoner's mental condition at the earlier date. A finding of incompetency is prospective only in application and is inadmissible to show prior mental disability. *Cohen v. Crumpacker*, 586 S.W.2d 370, 376 (Mo.App.1979). There is a presumption of sanity preceding adjudication with the burden of proof being on the party who seeks to show want of mental capacity to contract. *Id.*

In sum, neither the agreement with Masoner as to outside advice nor the suggestion of mental infirmity filed by Gepford amounted to proof of admissions of Masoner's incompetency to contract sufficient to compel a judgment in Masoner's favor. They were merely details of evidence which the trial court was entitled to consider along with other evidence showing business transactions Masoner had handled and other evidence indicative of an ability on Masoner's part to handle transactions. Appellant's first point is denied.

The second point Masoner raises is less readily discussed because neither the statement of the point nor the argument in the brief indicates what error it is contended was made warranting reversal of the judgment. The basis for the claim appears to be that the bank owed a fiduciary duty to Masoner and therefore any transaction with the bank which Masoner later concluded was not to his advantage could be avoided. The first test of the contention must be to ascertain whether there was proof of a fiduciary or confidential relationship between Masoner and the bank.

■ Confidential and fiduciary relations and undue influence are interrelated, the former two terms being synonymous. A confidential relation exists between two persons whenever one trusts in and relies on the other. In order for such a relation to exist there must be evidence of a special trust with respect to the property or business and, stemming therefrom, an exercise of influence which breaks the will power of the person over-influenced. *Hedrick v. Hedrick*, 350 Mo. 716, 726, 168 S.W.2d 69, 74 (1943).

■ The evidence in this case shows no special trust between Masoner and the bank with respect to the purchase of the mobile home and the loan of bank funds. It was Schmidt and Masoner who first came to the bank for assistance in obtaining housing for Masoner and in response, they were merely shown the repossessed trailer and given the opportunity to buy it. No evidence described any representations made to Masoner about the condition of the mobile home nor does it appear that the bank exerted any effort advocating that Masoner make the purchase. Masoner and his neighbors had a full opportunity to and did inspect the trailer and they pronounced it to be satisfactory. In fact, all the evidence indicated the mobile home was in good condition when delivered to Masoner.

The loan transaction was similarly a transaction lacking any indicia of a special trust between Masoner and the bank. It could well be argued that such a relationship may have existed with respect to the $10,000 note in that the bank was under a duty to advance funds against the note only for the agreed purposes and to charge Masoner with a repayment obligation limited by the agreement to sums actually used for purchase and relocation of the trailer. No breach of that obligation is charged in this case, however, because the $10,000 note was replaced by the note for $6905.59 which, according to the evidence, was the actual cost to the bank for the goods and services supplied.

Masoner's assertion that a special relationship existed in this transaction placing the bank in the position of a fiduciary is further weakened by the facts of participation by others in the arrangements. At each stage, Masoner was accompanied by and presumably advised by one or more of his friends and neighbors. This was the situation when the trailer was first inspected, when the agreement referred to earlier was signed and when Masoner signed the loan papers including the note and mortgage. Not only were these individuals actually present and acting as observers/advisors for Masoner, the agreement itself recognized that the bank was not dealing with Masoner alone. It was an acknowledged fact that the transaction was not one in which Masoner was to rely on advice from the bank, but from his neighbors who were assisting him.

Finally, there was no evidence at all of any undue influence exercised by the bank or any advantage sought or obtained by the bank. It sought no profit on resale of the trailer and took Masoner's note only to cover actual expenses and disbursements. The claims of error are without merit.

The judgment is affirmed.

All concur.